**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABELLE HECK, individually and on behalf of all others similarly situated, | ) ) ) Case No.: |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) JURY TRIAL DEMANDED |
| INTUIT, INC. d/b/a TURBOTAX, INTUIT FINANCING INC., MVB BANK, INC., and WEBBANK. | ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Isabelle Heck ("Plaintiff"), a U.S. Army veteran and dependent of an active-duty service member, by and through undersigned counsel, individually and on behalf of all others similarly situated, brings this class action complaint against Defendants Intuit, Inc. d/b/a TurboTax, Intuit Financing Inc., MVB Bank, Inc., and WebBank (collectively, "Defendants" or "TurboTax"), for restitution, damages, injunctive relief and any other available legal or equitable remedies resulting from the unlawful actions of Defendants. Plaintiff's allegations are based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiff which are based upon her personal knowledge.

## NATURE OF THE CASE

1. The Military Lending Act, 10 U.S.C. § 987, *et seq.* ("MLA"), was enacted to protect United States active-duty service members and their dependents (collectively, "Covered Members") from predatory or unlawful lending practices. Such practices endanger our nation's military readiness and are detrimental to service member retention, morale, household stability, security clearances, and career advancement.

2. This Complaint seeks to protect active-duty military service members and their dependents from TurboTax's unlawful lending practices which violate the MLA.

3. TurboTax is a leading provider of tax return preparation and electronic filing services nationwide. Plaintiff used TurboTax's services to prepare and file her tax returns for 2024.

4. Defendants are in the business of tax refund advance lending through the TurboTax Refund Advance ("Refund Advance") product—a short-term, high-speed loan offered by Defendants, allowing taxpayers to receive a portion of their anticipated federal refund shortly after filing their return, often the same day.

5. These loans are repaid by a covered borrower's expected refund when the tax refund

CLASS ACTION COMPLAINT

is received.

6.    Defendants' Refund Advance product is inseparable from a web of required ancillary financial accounts that generate revenue despite Defendants' marketing of the loan itself as "no-fee" and "0% APR."

7.    To receive a Refund Advance Loan, consumers are required to (i) e-file their federal tax return through TurboTax, and (ii) currently have or open a Credit Karma Money Spend (checking) account with banking services provided by MVB Bank, Inc. ("MVB"), into which loan proceeds are deposited and through which repayment is collected.

8.    While Defendants represent the Refund Advance Loan carries no interest or loan fees, repayment is structured through a deposit account issued by Defendants' banking partner—the Credit Karma Money Spend account services issued by MVB—into which Defendants direct the IRS to deposit the borrower's refund and from which Defendants automatically deduct the loan principal and ancillary TurboTax fees before releasing any remainder to the borrower. Once the borrower's tax return is accepted by the IRS, the borrower's refund routing is irrevocable.

9.    Defendants' short-term payday-style advance loan is originated by WebBank and facilitated by Intuit Financing Inc.

10.    Although the Refund Advance loan is marketed as having an Annual Percentage Rate of "0%", this stated rate does not take into account added fees and charges, which increase the Military Annual Percentage Rate ("MAPR") of the loans.

11.    In actuality, consumers who utilize Defendants' Refund Advance product incur fees that are functionally tied to the extension of credit.

12.    For example, consumers who elect or are steered into Defendants' Refund Processing Service—often presented as part of the same refund-based transaction in the TurboTax filing flow—are charged a $40 Refund Processing Service fee that is deducted directly from the consumer's federal

3

CLASS ACTION COMPLAINT

tax refund before any remainder is released to the consumer. Additional fees may be incurred depending on how the Credit Karma Money Spend account into which loan proceeds are deposited is used, as governed by the Credit Karma Money Spend Account Terms and Disclosures.

13. The required account structure and integrated fee architecture enable Defendants to extract value through mandatory banking products, refund-processing services, and associated fees that reduce the consumer's tax refund. These costs are not incidental; they are integral to the Refund Advance Loan program and disproportionately impact service members and/or their spouses or dependents living paycheck to paycheck, rendering the product far more expensive than Defendants' marketing suggests.

14. Thus, although Defendants advertise the Refund Advance loan as a "0% APR" loan, the product's structure and required ancillary services cause the MAPR to far exceed the MLA's 36% cap for Covered Borrowers, including active-duty service members and their dependents.

15. The MLA prohibits creditors from extending consumer credit to covered borrowers at a MAPR greater than 36%, calculated to include not only interest, but also fees and charges imposed directly or indirectly as a condition of the extension of credit. *See* 10 U.S.C. § 987, *et seq.*

16. Critically, the MAPR expressly includes application fees, participation fees, fees for ancillary products required to obtain credit, and fees imposed in connection with a transaction for consumer credit. *See* 32 C.F.R. § 232.4.

17. Thus, Defendants' reliance on a nominal "0% APR" is legally irrelevant if the economic cost of credit, properly calculated, exceeds the MLA's statutory ceiling.

18. Plaintiff, a U.S. Army veteran and a dependent of an active-duty military member, has used Defendants' tax services and, at relevant times, has obtained a Refund Advance loan.

19. By virtue of the unlawful arbitration agreements within each loan's relevant terms, as well as fees charged in connection with the extension of credit, Defendants extended consumer credit

4

CLASS ACTION COMPLAINT

to Plaintiff on numerous occasions in violation of the MLA.

20.    Defendants agree that their Refund Advance product is a loan. Indeed, the first page of the Refund Advance loan clearly states, in bold, that **"TurboTax Refund Advance is a loan based upon your anticipated refund and is not the refund itself."**[1]

21.    As tax refund advance loans have become more popular, the parallels to payday lending are striking.

22.    Like payday loans, Defendants' products trap users in a cycle of reborrowing that increases their financial distress, all in service of generating revenue. Considering the substance of the transactions, including that Plaintiff used the funds obtained for personal or household use, Defendants' transactions constitute consumer credit.

23.    In violation of the MLA, Defendants' products charge a MAPR well in excess of the MLA's legal limit.

24.    Defendants' loans violate the MLA in at least five ways: by (i) charging interest above the 36% statutory MAPR cap; (ii) failing to provide credit disclosures required by the MLA; (iii) including a purported class action ban and waiver of jury trial; (iv) including a mandatory binding arbitration clause; and (v) using a method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. 10 U.S.C. §§ 987(b), (c) & (e)(1), (3), (5), (6).

25.    Among the abusive lending practices that the MLA was designed to curb were predatory loans made to service members.[2]

---

[1] https://turbotax.intuit.com/refund-advance/ (last accessed April 29, 2026).

[2] Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents, *U.S. Dep't of Defense* (Aug. 9, 2006), available at https://apps.dtic.mil/sti/pdfs/ADA521462.pdf.

CLASS ACTION COMPLAINT

26.    In a Department of Defense ("DoD") report on lending practices affecting military members (the "Report"), the egregious lending practices prevalent in the lending industry were highlighted.[3]

27.    The Report noted that lenders were "heavily concentrated around military bases," with statistics showing that communities with military installations "rank among the most heavily targeted communities in their respective states."[4]

28.    Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans costing service members over $80 million in abusive fees annually as of 2005.[5]

29.    Defendants' business practices violate the MLA and are part of a systematic nationwide policy and practice.

30.    Plaintiff seeks to hold Defendants accountable for their actions and prevent their predatory lending practices from continuing.

**PARTIES**

31.    Plaintiff Isabelle Heck is a natural person and, at all times material hereto, has been a citizen of Georgia.

32.    During the class period, Plaintiff was a Covered Member as that term is defined by the MLA in that she previously served on active duty and is currently the dependent of an active-duty service member employed by the United States military.

33.    Defendant Intuit Inc. is a Delaware corporation with its headquarters at 2700 Coast

---

[3] *Id.* at 10–16.

[4] *Id.* at 10–11.

[5] *Id.* at 11.

CLASS ACTION COMPLAINT

Avenue in Mountain View, California. Intuit Inc. owns and operates the TurboTax tax preparation platform through which the Refund Advance loan product is marketed and originated to consumers.

34.    Defendant Intuit Financing Inc. (NMLS #1136148) is a subsidiary of Intuit Inc. and is identified in Defendants' loan disclosures as the facilitator of TurboTax Refund Advance loans.

35.    Defendant WebBank is a Utah-chartered industrial bank with its principal place of business in Utah. WebBank is identified in Defendants' loan disclosures as the issuer of TurboTax Refund Advance loans.

36.    Defendant MVB Bank, Inc. is a federally insured West Virginia state-chartered bank. MVB Bank, Inc. is the issuer of the Credit Karma Money™ Spend account debit card that Refund Advance loan borrowers are required to open and maintain to receive loan proceeds and through which repayment is collected.

37.    Defendants have acted in concert and are jointly and severally liable for their concerted and collective violations of the MLA.

**JURISDICTION AND VENUE**

38.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than Defendants, namely Plaintiff, a citizen of Georgia, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

39.    This Court has jurisdiction over Defendants, because they, at all times relevant herein, regularly conducted business in the State of California, including providing tax preparation services in California and making loans or servicing loans to service members in California.

40.    Venue is proper in this District because Defendants coordinated business operations in California, did business in California and in this District, and committed the wrongful lending practices alleged herein in this District.

7

CLASS ACTION COMPLAINT

41.     Plaintiff's claims arise out of and relate to Defendants' forum-related activities.

42.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial District, Defendant Intuit is headquartered and subject to personal jurisdiction in this District, and Defendants transact business in this District.

43.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### I.   THE MLA WAS DESIGNED TO PROTECT COVERED MEMBERS

44.     The DoD's Report on lending practices discussed the payday lending industry at length.[6]

45.     The Report noted that payday lenders were "heavily concentrated around military bases," with statistics showing that communities with military installations "rank among the most heavily targeted communities in their respective states."[7]

46.     Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans costing service members millions in abusive fees.[8]

47.     Moreover, the military payment architecture, and the Uniform Code of Military Justice to which service members are bound, make them particularly vulnerable to predatory payday loans:

> Check-holding, a central feature of payday loans, is particularly risky for military borrowers. Every payday loan involves a prospective "bad" check. Military borrowers are required to maintain bank accounts in order to receive direct deposit of military

[6]Report, *supra*, n.2.

[7]*Id.* at 10–11.

[8]*Id.* at 11.

CLASS ACTION COMPLAINT

pay and are subject to the Uniform Code of Military Justice that penalizes deliberately writing a check not covered by funds on deposit. Borrowers become trapped in repeat borrowing or renewals of loans in order to keep the check used to obtain the loan from bouncing, a key reason that payday loans are debt traps.[9]

48.     While the precise tax refund advance product offering was developed somewhat recently, its genre of high interest loan is not new. In 2006, the DoD noted military "borrowers encounter[ed] a booming virtual market of small loan offers, payday loans, and 'military loans' via the Internet."[10] Those loans, like Defendants' loans, "are delivered and collected online through electronic fund transfer."[11]

49.     The Report noted key similarities between the various predatory lending products that accurately encapsulate Defendants' business model:

(1) Predatory lenders seek out young and financially inexperienced borrowers who have bank accounts and steady jobs, but also have little in savings, flawed credit or have hit their credit limit. These borrowers are less likely to weigh the predatory loan against other opportunities and are less likely to be concerned about the consequences of taking the loan.

(2) Predatory lenders make loans based on access to assets (through checks, bank accounts, car titles, tax refunds, etc.) and guaranteed continued income, but not on the ability of the borrower to repay the loan without experiencing further financial problems.[12]

(3) … Increasingly the Internet is used to promote loans to service members.

---

[9]*Id.* at 14. To be sure, Refund Advance Loan providers like Defendants do not collect physical checks from their customers at loan initiation but instead take a virtual check by requiring Covered Members to authorize automatic debits from their tax refunds to repay their loans.

[10]*Id.* at 15.

[11]*Id.* at 16.

[12] To that end, lenders' "use of checks, access to bank accounts, [and similar other methods of extracting repayment] pressure the borrower to consider loan payments as being their top priority." *Id.* at 44.

CLASS ACTION COMPLAINT

(4) Predatory products feature high fees/interest rates, with some requiring balloon payments, while others pack excessive charges into the product. The result of their efforts is to obfuscate the comparative cost of their product with other options available to the borrower.

. . .

(6) Predatory lenders attempt to work outside of established usury limits, either by attempting to obtain exemptions from federal and state statutes or by developing schemes designed to circumvent existing laws.[13]

50.    The Report further found "high interest loans, whether provided as a payday loan, military installment loan, or as a result of unscrupulous automobile financing can leave a service member with enormous debt, family problems, difficulty maintaining personal readiness and a tarnished career."[14]

51.    As if being trapped in a debt cycle is not bad enough, some service member victims of payday and other lenders experienced disciplinary action (ranging from reprimands to "loss of promotions and separation from the military") as a result of their financial hardship.[15]

52.    Drawing from the bountiful evidence of service member abuse at the hands of predatory lenders, the DoD concluded it could not "prevent predatory lending without assistance from Congress, the state legislatures, and federal and state enforcement agencies."[16]

53.    To curb usurious interest rates, excessive annual percentage rates ("APRs"), and bogus fees, the DoD requested legislation that would prevent lenders from preying on service members and

---

[13]*Id.* at 21–22.

[14]*Id.* at 39.

[15]*Id.* at 41–42.

[16]*Id.* at 46.

endangering the nation's military readiness.[17]

54.    The American Bar Association and others expressed support for the DoD's request, noting the urgent need for remedial Congressional action to curb predatory loan practices harming service members. The legislation requested was supported by the DoD, military and veterans' organizations, legal aid organizations, consumer advocacy groups, faith-based organizations, and of course lawmakers.

55.    In response, Congress passed the MLA to protect Covered Members from unfair, deceptive, and excessively priced loans.

## II.  THE MILITARY LENDING ACT

56.    In the wake of the DoD's investigations, in 2006, the Military Lending Act, 10 U.S.C. § 987 *et seq.* was enacted.

57.    The MLA makes it unlawful for a creditor to "impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to a Covered Member or a dependent of a Covered Member." 10 U.S.C. § 987(b).

58.    The MLA also requires mandatory disclosures in "consumer credit"[18] transactions with Covered Members, which include:

---

[17] Specifically, the DoD requested legislation protecting service members "from unfair, deceptive lending practices and usurious interest rates and to require uniform disclosure of credit and terms. Specifically, lenders should not be permitted to base loans on prospective bad checks, electronic access to bank accounts, mandatory military allotments, or titles to vehicles. All costs involved in borrowing should be included in interest rate calculations and disclosures. Laws and regulations must be changed to close regulatory loopholes that leave non-resident military borrowers unprotected in many states." *Id.*

[18] Under the MLA, consumer credit is defined as "credit offered or extended to a Covered Member primarily for personal, family, or household purposes," subject to a finance charge or payable by written agreement in more than four installments and outside the ambit of any of the identified exceptions.

CLASS ACTION COMPLAINT

- A statement of the annual percentage rate of interest applicable to the extension of credit, 10 U.S.C. § 987(c)(1)(A);

- Any disclosures required under the Truth in Lending Act, 10 U.S.C. § 987(c)(1)(B); and

- A clear description of the payment obligations of the member or dependent, as applicable, 10 U.S.C. § 987(c)(1)(C).

59.    Additionally, the MLA prohibits creditors from including provisions in a consumer-credit transaction that require the Covered Borrower to submit to arbitration or to waive the borrower's right to legal recourse. 10 U.S.C. § 987(e).

60.    The MLA also makes it unlawful to use a check or other method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. 10 U.S.C. § 987(e).

**III.    TAX REFUND ADVANCE LOANS**

61.    Defendants market and facilitate short-term, refund-based consumer loans known as TurboTax Refund Advance loans, which are issued by Defendant WebBank, facilitated by Defendant Intuit Financing Inc., and offered in connection with tax preparation services by TurboTax, an Intuit Inc. product, online and through TurboTax nationwide.

62.    The Refund Advance Loan is marketed as a "no interest" or "0% APR" product and is targeted at consumers seeking immediate access to funds prior to receipt of their anticipated federal tax refunds.

63.    Many consumers who obtain Refund Advance Loans, including Plaintiff and similarly situated class members, are covered borrowers within the meaning of the MLA, 10 U.S.C. § 987, including active-duty service members and/or their dependents.

64.    As a condition of receiving a Refund Advance Loan, consumers must e-file their

12

CLASS ACTION COMPLAINT

federal tax return with TurboTax and must currently have or open a Credit Karma Money Spend (checking) account and debit card issued by Defendant MVB. These disclosures are expressly stated and located in Defendant Intuit's own loan program disclosures on its website.[19]

65.    As a further condition of receiving a Refund Advance Loan, consumers must authorize the routing of their federal tax refunds through accounts with bank account services provided by Defendant MVB for repayment of the loan, and once the tax return is filed and accepted by the IRS, the direction of the refund is irrevocable.

66.    Consumers who obtain a Refund Advance Loan are required to receive loan proceeds through the MVB-serviced Credit Karma Money Spend account (the "Required Account"), which, upon information and belief, is governed by separate account agreements that impose numerous other fees, including fees relating to ATM withdrawals. These fees are deducted directly from consumers' funds and refunds, reducing the amount of money ultimately received by the borrower.

67.    Making matters worse, when the IRS deposits the consumer's federal tax refund into the Required Account, Defendants automatically deduct the amount of the Refund Advance Loan plus any TurboTax fees before releasing any remaining funds to the consumer.

68.    Although Defendants label the Refund Advance Loan as carrying "0% APR" and "$0 loan fees," consumers who use the Refund Advance loan are typically charged a $40 Refund Processing Service fee—a fee that is deducted directly from the consumer's federal tax refund and that Defendants' own loan program disclosures acknowledge in the same paragraph as the Refund Advance loan terms.[20]

---

[19] *Supra*, n.1.

[20] *Id.* ("Although there are no loan fees associated with the TurboTax Refund Advance loan, separate fees may apply if you choose to pay for TurboTax with your federal refund.")

CLASS ACTION COMPLAINT

69.    The Military Lending Act requires calculation of the MAPR, which includes not only stated interest, but also fees and charges imposed directly or indirectly as a condition of the extension of credit. *See* 32 C.F.R. § 232.4.

70.    The $40 Refund Processing Service fee is, in practice, imposed in connection with the extension of credit and must therefore be included in the MAPR calculation under the MLA. Upon information and belief, the Refund Processing Service fee is presented to the consumer as the default payment option in the TurboTax filing flow during the same workflow as the Refund Advance loan application; the fee is collected through the same refund-routing mechanism that secures repayment of the Refund Advance loan; and Defendant Intuit's own disclosures group the fee with the Refund Advance loan terms.

71.    Refund Advance loan applicants are, by definition, consumers who lack the liquidity to await receipt of their tax refund. Such consumers also predominantly lack the liquidity to pay TurboTax filing fees upfront with a credit or debit card, rendering utilization of the anticipated refund itself as the only practical alternative payment method offered by Defendants. Accordingly, the $40 Refund Processing Service fee is incurred, upon information and belief, by substantially all Refund Advance Loan borrowers and operates, in practice, as a fee imposed in connection with the extension of credit.

72.    When the $40 Refund Processing Service fee is annualized over the short duration of the Refund Advance Loan—often lasting only days or weeks until the IRS distributes the refund—the effective MAPR far exceeds the MLA's 36% statutory cap, particularly for lower-dollar advances.

73.    For example, for a Refund Advance loan of $500 and a term of approximately 14 days (typical IRS refund timing for e-filed returns), and given the associated $40 Refund Processing Service fee incurred as an incident to the extension of credit, the resulting MAPR is approximately **209%**.

CLASS ACTION COMPLAINT

74.    Smaller loans would have an even higher MAPR. Below is a representative table that samples the corresponding effective APR compared to different borrowing thresholds of anticipated Refund Advance amounts:

| Loan Amount | Fees | Days | MAPR (Approx.) |
|---|---|---|---|
| $250 | $40.00 | 14 | **417.1%** |
| $500 | $40.00 | 14 | **208.6%** |
| $750 | $40.00 | 14 | **139.0%** |
| $1,000 | $40.00 | 14 | **104.3%** |

75.    As a result, and as demonstrated above, Defendants extend consumer credit to covered borrowers at an unlawful MAPR in violation of 10 U.S.C. § 987(b).

76.    In connection with applying for and receiving Refund Advance Loans, consumers are required, upon information and belief, to electronically sign agreements containing mandatory arbitration provisions which purport to require binding individual arbitration and waive the right to participate in class or representative actions.

77.    The Military Lending Act expressly prohibits creditors from requiring covered borrowers to submit to arbitration or waive their rights to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e)(3).

78.    Additionally, the MLA expressly prohibits a creditor from demanding unreasonable notice from a borrower as a condition for legal action. 10 U.S.C. § 987(e)(4).

79.    Defendants' inclusion and enforcement of arbitration provisions in connection with Refund Advance loans issued to covered borrowers violates the MLA and renders those provisions void and unenforceable as to covered borrowers.

80.    Defendants' practices described herein are standardized and uniformly applied to all

CLASS ACTION COMPLAINT

covered military members and consumers who apply for and receive Refund Advance loans.

81.    Defendants knew or should have known that the $40 Refund Processing Service fee would be incurred by Refund Advance loan borrowers in connection with the loan; that fee would cause the MAPR of Refund Advance loans to exceed the MLA's statutory cap; and the inclusion of arbitration provisions, class action waivers, jury trial waivers, and use of borrower deposit accounts as security violated the express protections afforded to service members under federal law.

### FACTS SPECIFIC TO PLAINTIFF

*Plaintiff's Experience*

82.    Plaintiff, as a U.S. Army veteran and the spouse of an active-duty member of the United States military, is a covered borrower within the meaning of the Military Lending Act, 10 U.S.C. § 987, at all times relevant to this action.

83.    In or around the 2024 tax filing season (i.e., early 2025), Plaintiff used TurboTax's tax filing services.

84.    In or around January 2025, Plaintiff agreed to take a Refund Advance loan.

85.    Plaintiff completed standardized paperwork in the process to obtain the Tax Year 2024 Refund Advance Loan (the "2024 Refund Advance Loan").

86.    In connection with repayment of the 2024 Refund Advance Loan, upon information and belief, Plaintiff incurred the $40 Refund Processing Service fee. At all times, Defendants represented that the 2024 Refund Advance Loan carried 0% interest.

87.    When the $40 Refund Processing Service fee incurred by Plaintiff is included in the MAPR calculation, Plaintiff's 2024 Refund Advance Loan carried an effective MAPR of approximately 209%, exceeding the MLA's statutory maximum of 36% by several orders of magnitude.

88.    In addition to the excessive MAPRs, Plaintiff was required to electronically sign

16

agreements containing mandatory arbitration provisions in connection with applying for and receiving the 2024 Refund Advance Loan.

89. The inclusion of a mandatory arbitration provision in connection with the loan violated the MLA's prohibition on requiring covered borrowers to submit to arbitration and waive their right to seek relief in court.

## TOLLING OF THE STATUTE OF LIMITATIONS

90. The Servicemember Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*, tolls any and all limitations or repose periods for all active-duty military members, including those similarly situated to Plaintiff, until their active-duty service concludes.

91. Specifically, § 3936(a) of the SCRA provides:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

## CLASS ALLEGATIONS

92. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of herself and all other persons similarly situated.

93. Plaintiff is a member of and seeks to represent the proposed "MLA Excessive Fee Class" and the "MLA Waiver of Rights Class" (collectively, the "Classes", and each, a "Class"), which are defined as follows:

**MLA Excessive Fee Class:** All Covered Members who entered into an agreement with Defendants to use a TurboTax Refund Advance loan or a substantially similar product for which Defendants charged a finance charge, including, without limitation, a Refund Processing Service fee or interest above the 36% MAPR cap.

**MLA Waiver of Rights Class:** All Covered Members who entered into an agreement with Defendants that included an arbitration agreement, a class waiver agreement, a waiver of the right to a jury trial, or otherwise imposed onerous legal notice provisions in the case of a dispute.

94. Expressly excluded from the Classes are: (a) any Judge presiding over this action and

members of their families; (b) Defendants and any entity in which any Defendant has a controlling interest, or which has a controlling interest in any of Defendants, and their legal representatives, assigns, and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

95.    Plaintiff reserves the right to amend the Classes definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

96.    **Numerosity.** Upon information and belief, there are tens or hundreds of thousands of Class Members for the MLA Excessive Fee Class and the MLA Waiver of Rights Class, respectively. The precise number of class members and their identities are unknown to Plaintiff currently but may be ascertained from Defendants' business records and other third-party sources. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

97.    **Commonality.** There are common questions of law and fact affecting the rights of each Class Member and common relief by way of damages. The harm that Defendants have caused is substantially uniform with respect to Class Members. Common questions of law and fact that affect the Class Members include, but are not limited to:

(a) Whether Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members are Covered Members subject to the protections of the MLA;

(b) Whether Defendants are "creditors" subject to the requirements and limitations of the MLA;

(c) Whether Defendants' loan products constitute an extension of "consumer credit" subject to the protections and limitations of the MLA;

(d) Whether Defendants entered into standard form loan agreements with Covered Members;

(e) Whether Defendants' loans exceed the MLA's statutory rate cap of 36% MAPR;

(f) Whether Defendants failed to provide required credit disclosures in violation of the MLA;

(g) Whether Defendants' standard form loan agreements contain a class action waiver provision, jury trial waiver provision, or onerous legal provisions in violation of the MLA;

(h) Whether Defendants' standard form loan agreements contain an arbitration clause in violation of the MLA;

(i) Whether Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members are entitled to actual or statutory damages for the aforementioned violations and, if so, in what amounts;

(j) Whether Defendants should be enjoined from continuing their lending practices in the manner challenged herein;

(k) Whether Defendants are subject to punitive damages, and, if so, the proper measure of such damages and remedies to which Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members are entitled under 10 U.S.C. § 987(f)(5); and

(l) Whether Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members are entitled to any other declaratory and/or injunctive relief.

98.    **Typicality**. The claims and defenses of Plaintiff are typical of the claims and defenses of the MLA Excessive Fee Class Members and the MLA Waiver of Rights Class Members because Plaintiff is a Covered Member and the loan agreements with Defendants are typical of the type of personal, household, or family loans that Defendants normally and routinely provide to Covered Members. Plaintiff suffered damages of the same type and in the same manner as the MLA Excessive Fee Class Members and the MLA Waiver of Rights Class Members. There is nothing peculiar about Plaintiff's claims. Plaintiff has no interests antagonistic to the interests of the other members of the MLA Excessive Fee Class and the MLA Waiver of Rights Class.

99.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the

19

CLASS ACTION COMPLAINT

other members of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

100. **Predominance & Superiority.** Absent a class action, most Classes members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendants' wrongful conduct.

101. **Final Declaratory or Injunctive Relief.** Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole.

<u>**FIRST CAUSE OF ACTION—EXCESSIVE INTEREST AND FEES**</u>
**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq.***
<u>**(On behalf of Plaintiff and the MLA Excessive Fee Class)**</u>

102. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–101 by reference as if fully set forth herein.

103. The MLA prohibits a creditor from obligating a "Covered Member" or dependent of a Covered Member (collectively, "Covered Members") to a loan in excess of 36% MAPR.

104. A "Covered Member" includes, "a member of the armed forces who is serving on[

CLASS ACTION COMPLAINT

a]ctive duty . . . under a call or order that does not specify a period of 30 days or fewer[.]" 32 C.F.R. § 232.3(g).

105.    "The MAPR is the cost of the consumer credit expressed as an annual rate[.]" 32 C.F.R. § 232.3.

106.    The MAPR includes, as relevant here, "[f]inance charges associated with the consumer credit" and "[a]ny fee imposed for participation in any plan or arrangement for consumer credit[.]" 32 C.F.R. § 232.4.

107.    Plaintiff and the MLA Excessive Fee Class Members are "Covered Members" and are therefore afforded the protections granted by the MLA.

108.    A Covered Member is a consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 C.F.R. § 232.3(g)(2) and (g)(3)).

109.    Plaintiff is considered a "Covered Member" with respect to her loan because Plaintiff was the dependent of an active-duty service member who is obligated to repay the loan she took out for personal, family, or household purposes.

110.    Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

111.    Defendants charged Plaintiff and the MLA Excessive Fee Class an amount above the 36% interest rate cap on their loans, in violation of the MLA.

112.    Upon information and belief, Defendants failed to make all the disclosures required by 10 U.S.C. § 987(c)(1)(A) and 32 C.F.R. § 232.6 in their standard form loan agreements, in violation of the MLA.

CLASS ACTION COMPLAINT

113.     As a result, Defendants have violated, and continue to violate, the Military Lending Act, 10 U.S.C. § 987.

114.     Accordingly, pursuant to 10 U.S.C. § 987(f)(5), individually and on behalf of and the MLA Excessive Fee Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to 10 U.S.C. § 987(f)(5).

115.     Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

**SECOND CAUSE OF ACTION—WAIVER OF RIGHTS**
**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq.***
**(On behalf of Plaintiff and the MLA Waiver of Rights Class)**

116.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–101 by reference as if fully set forth herein.

117.     A "Covered Member" includes, as relevant here, "a member of the armed forces who is serving on[ a]ctive duty . . . under a call or order that does not specify a period of 30 days or fewer[.]" 32 C.F.R. § 232.3(g).

118.     Plaintiff and the MLA Waiver of Rights Class Members are "Covered Members" and are therefore afforded the protections granted by the MLA.

119.     A Covered Member is a consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 C.F.R. § 232.3(g)(2) and (g)(3)).

120.     Plaintiff is considered a "Covered Member" with respect to her loan because Plaintiff was the dependent of an active-duty service member who is obligated to repay the loan she took out for personal, family, or household purposes.

22
CLASS ACTION COMPLAINT

121.   Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

122.   The MLA prohibits creditors from attempting to secure the waiver of various rights. 10 U.S.C. § 987(e).

123.   Upon information and belief, Defendants' standard form Refund Advance loan agreements include mandatory arbitration agreements in violation of 10 U.S.C. § 987(e)(3).

124.   Defendants utilize a check or other method of access to a deposit, savings, or other financial account maintained by the borrower as security for the Refund Advance obligations.

125.   As a result, Defendants have violated, and continue to violate, the Military Lending Act, 10 U.S.C. § 987.

126.   Accordingly, pursuant to 10 U.S.C. § 987(f)(5), individually and on behalf of the MLA Waiver of Rights Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to 10 U.S.C. § 987(f)(5).

127.   Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1. That the Court determine that this action may be litigated as a class action and that Plaintiff and her counsel be appointed class representative and class counsel, respectively;

2. That the Court enter judgment against Defendants and in favor of Plaintiff and the Classes on all counts;

CLASS ACTION COMPLAINT

3. That the Court find and declare that Plaintiff's, the MLA Excessive Fee Class Members', and the MLA Waiver of Rights Class Members' standard form loan agreements violate the MLA;

4. That the Court find and declare that Defendants violated the MLA and award Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members actual damages of not less than $500 per violation pursuant to 10 U.S.C. § 987(f)(5)(A)(i);

5. That the Court award Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A)(ii);

6. An order awarding Plaintiff, the MLA Excessive Fee Class Members, and the MLA Waiver of Rights Class Members actual, statutory, and all other damages available by law, with pre- and post-judgment interest;

7. An order preventing Defendants from attempting to collect on any loans that violated the MLA from Plaintiff and the Class members;

8. That the Court enjoin Defendants from continuing to engage in unlawful lending practices in violation of the MLA;

9. That Defendants be required by this Court's Order to compensate Plaintiff's counsel for their attorneys' fees and costs of suit, and that Defendants be ordered to bear the cost of notice to the absent class members, as well as the administration of any common fund;

10. That the Court award reasonable attorneys' fees as provided by applicable law, including under the MLA, and/or applicable statutes or code of civil procedure;

11. That the Court award all costs of suit; and

12. That the Court award such other and further relief as the Court may deem just and proper.

<h3 style="text-align:center"><u>JURY DEMAND</u></h3>

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: April 29, 2026

Respectfully submitted,

By: */s/ Scott Edelsberg*

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
Gabriel Mandler (pro hac vice forthcoming)
Omer Kremer (pro hac vice forthcoming)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com
omer@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT